Good morning, Your Honors. My name is Carla Kraus. I'm representing Ruben Reyes-Torres. I am going to request less time to present my argument regarding relief from removal. Go ahead. Get right to it. Thank you. As to the government brief, we are in agreement with their brief or motion they filed in September. Could you move in a bit to the microphone? Yes. Thank you. Sorry about that. Videsma Galicia is now the law of the circuit. Therefore, Mr. Reyes is not removable for commission of an aggravated felony. Yes, and we may have to wait for the resolution of the petition for a hearing on Bonk in that case, but we understand that it's going to be binding one way or the other depending on how that petition comes out. I understand. Also, since his 2008 vacation of his conviction is still valid, if this case is remanded, we would be moving to terminate removal proceedings. So I would like to hand the microphone over to Ms. Riel Muto from the National Immigration Project regarding motion to reopen issues. Okay. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Trina Riel Muto, and I will be arguing on behalf of AMICI, the National – Please move your microphone down. There you go. – the National Immigration Project of the National Lawyers Guild and the American Immigration Council. I will be addressing the Board of Immigration Appeals Regulation at 8 CFR 1003.2d, which bars review of motions to reopen after a noncitizen has left the United States. Despite over 30 years of case law from this circuit, finding that the regulation doesn't apply in situations where the motion to reopen is based on a vacated conviction, the government and the Board of Immigration Appeals time and time again continue to ignore this precedent and apply the regulation. This case presents an opportunity to clarify in no uncertain terms that under the new statutory framework that Congress put in place through the Immigration Act of 1996, Congress did not intend to preclude noncitizens who have departed the country from exercising their statutory right to file a motion to reopen. This Court has carved out exceptions to the departure bar regulation depending on whether the motion was filed, as I mentioned before, based on a vacated conviction, depending on when the motion was filed, and depending on how the person was deported. However, in light of this Court's decision in Coit v. Holder, this panel need only follow the Supreme Court's decision in Clark v. Martinez to invalidate this outdated regulation. In Clark v. Martinez, the Supreme Court held that when a court interprets a statute with respect to one group of individuals, its interpretation of that statute is binding on all groups of individuals subject to that statute. The Supreme Court reasoned that the statutory text in Clark provides for no distinction between admitted and non-admitted aliens, and those were the two groups of noncitizens at issue in that case. The Court further stated that giving a statute a different meaning depending on what group of noncitizens is subject to it would be to invent a statute rather than to interpret one. And that exact same principle applies here. In Coit v. Holder, this Court interpreted the motion to reopen statute and looked at the purpose of IRS statutory scheme and invalidated the regulation as applied to somebody who was forcibly removed. Do you read Coit as a cross-the-board determination, or is it an exception to the rules that we had been following? I think that it's potentially, it should be read across the board, because if you look at the analysis of Coit. Do you read it that way? Well, because it's a step one determination. Suppose a person isn't mandatory or required to leave, but they voluntarily leave. Do you think Coit extends that in and of itself? I think the Supreme Court's decision in Clark v. Martinez makes it clear that Coit has to apply, because if you apply. Well, now, that's a different answer. Different rules. My question was, does Coit itself extend to people who are, who voluntarily leave the country? Well, we would argue that Mr. Reyes-Torres, in this situation, who is, falls under Coit because he was deported. However, we recognize. I'm not sure I got your answer. If you're taking the position that Coit covers this, then you don't need anything else. Well, we recognize that there's something factually distinguishable about this case versus the case in Coit, which is that Mr. Reyes-Torres, unlike the petitioner in Coit, didn't file his motion to reopen before he was deported and didn't request to stay. Was the individual here, did he leave voluntarily? No, he was deported by the Immigration Service. Pardon me? He was deported by the Immigration Service. So arguably there could, arguably he files, he falls under Coit. But this case presents the opportunity to make it clear so that the case law in this circuit is clear. Okay, now I understand. You want Coit to be extended. Correct. Because that's what the Supreme Court's decision in Clark v. Martinez compels. It's the same statutory provision, the same act of Congress, and therefore this Court can apply different rules depending on who's before the Court. So this is a clear determination. Pardon? Is this area clear to you? It seems to me that it's somewhat ambiguous. Why wouldn't we rely upon the Board under Chevron deference to make this determination? Because a couple answers to that. Coit clearly says the intent of Congress is clear. Coit is a step. It applied the Chevron analysis and decided under Step 1 of Chevron that the regulation was invalid. You wouldn't defer to the Board of Immigration Appeals. It wouldn't even, decision in matter of arm and diarist, it wouldn't even come into play unless you determined that the statute was unclear. And the binding precedent of this circuit is that Congress was clear. The Coit Court looked at the motion to reopen provision. It looked at the comprehensive scheme that it was enacted at the same time, looked at the purpose of IRA, and said Congress was clear. We don't want to do that. So the Board accepted that, and the Board treats Coit as an exception to the rule. Correct? The Board doesn't always follow what this Court has said. If I could rephrase that. The Board's not rejecting Coit as yet. As yet. It hasn't. So, I mean, I think that's Judge Wallace's question, is that their position, as I understand it, or at least seems to be, is that they're maintaining their reliance on the general bar and recognizing Coit as an exception, at least out of this circuit. Is that your understanding? At present, I don't know of any examples where the Board has refused to follow Coit. However, this Court issued decisions in Lynn v. Reynoso-Cordoso, which said you don't apply the regulation if the motion is filed after the proceedings have been completed. After that set of decisions, the Board issued its decision in matter of Armendariz and said that was a step two decision. We're going to issue our decisions and uphold the regulation. Now comes along Coit, a step one decision. The Board has to follow Coit, and it has to follow, under Clark v. Martinez, Coit in all situations. And that's what this Court should do. This Court should clarify that that's what's required by Clark v. Martinez. Well, in actuality, the Board doesn't always follow our cases. But if the Board chooses to treat Coit as an exception and uses its own rule for the rest, how would this case come out? What would you want us to do, tell the Board they're wrong? Well, our initial position would be that Mr. Reyes-Torres, because he was deported, before he had the opportunity to file a motion to reopen at a state request, was forcibly removed and falls under the Coit holding. However, I would urge this Court to clarify the law of the circuit so that we don't run into, continually run into situations where it's here. That's how the development of the common law goes. You take case by case. You look at exception by exception, perhaps. I mean, you can resolve this on Coit. You can resolve it maybe on Cardo's fiasco, on the vacation of the conviction. Or you could take the bigger issue on and decide whether or not the Board properly construed the statute. I mean, we have all those options in front of us. You do. The Court has several options in front of it. And, you know, as we... I mean, whether we may... But there are reasons where we might not want to decide that our circuit law on Lynn doesn't apply anymore. That's a bigger issue, you know. But then what ends up happening is that... Of course it does. Noncitizens continually come up here and talk about the fact that the Board hasn't applied the law. The government didn't even cite Cardoso, for example, as you raised, in its brief. And here we are again. And so because the Supreme Court decision... But we're open every month. We have cases.  But I think when you have a Supreme Court decision, the Supreme Court says, Look, you've interpreted the statute. That's the interpretation that applies for everybody. I think that this Court is compelled by the Clark v. Martinez decision. Well, I'm not sure the Clark goes that far in that sense. Because we do have a distinction in this case and the next case. And the next case involves... And we'll argue that. But the next case involves someone who self-deported. This one has involved a deportation and somebody who files afterward. So, I mean, there are just slightly different circumstances. And I'm not sure Clark compels us to treat all of those people the same. If I could respond to that, I'd like to read from the Clark v. Martinez decision where the Supreme Court actually takes on... sort of recognizes that there might be different factual situations underlying what should lead to the interpretation of a statute. And the majority said, The government, joined by the dissent, argues that the statutory purpose and the constitutional concerns that influenced our statutory construction in Zedvitus, the earlier decision, are not present for aliens such as Martinez and Benitez, who have not been admitted to the United States. Be that as it may, it cannot justify giving the same detention provision a different meaning when such aliens are involved. That's pretty clear language from the Supreme Court that once this Court has interpreted the statute, that's the interpretation that applies, not depending on who's before it. That's a pretty broad principle to apply to different circumstances here. I mean, there is a difference. And if there's no principal difference, of course, that would apply. If there's a principal difference, and that's the key question, I think, in these two cases, is there a difference between someone who self-supports, which we'll hear in the next case, is there a difference to somebody who's removed and doesn't file his motion before? I mean, Coyd was pretty clear. He files his motion. They take him out of the country and say, Sorry, your motion's moved. I mean, that's a fairly clear result, it seems to me. This is slightly different. Right. In this situation, Mr. Reyes-Torres, at the time that he was deported, hadn't had his conviction vacated. And therefore, there was no basis for reopening at the time. But you have a 90-day statutory window in which to file a motion to reopen. And sometimes the basis on which you're seeking reopening materializes after the deportation. And it would be unfair to take away that person's statutory right, which Congress gave them. I mean, we're not talking anymore about the motion to reopen as a creature of regulation. Congress codified the statute, and we have to give meaning to that codification. I see that my time is up, and I'd like to reserve the rest for rebuttal unless there are further questions. Very good. Thank you. Anything from the government? May it please the Court. Daniel Smoot on behalf of the Respondent United States Attorney General. Counsel, Mr. Reyes was deported after seven days. That's correct, Your Honor. How did he have enough time to prepare a motion to reopen? Well, Your Honor, he did have seven days, and it's, you know, the government is in a difficult position. Mr. Reyes-Torres was in immigration detention, and he was removed to his native Mexico. I mean, the flip side of that is the criticism that the government let somebody remain in detention when it was possible to remove him within a week. I don't think you're answering the question. You're saying you're justifying what the government did. The question is, how did he have time to file a petition to reopen? He's in detention. You remove him after seven days. How can he possibly do that? Your Honor, he was represented. And, you know, the fact is he had no basis to move to reopen until he actually his conviction in California was overturned, which I think was actually just 30 days later. I mean, what the logical consequence of this is to have the government, who by congressional statute, of course, has to remove somebody within 90 days, keep somebody in detention for some period of time in the event that they may choose to challenge their removal or move to reopen. The flip side is you allow them to file a motion to reopen after they leave the country. That's the argument that we heard in Coit. Sure. And the government said, well, you know, we have to remove people, and we said yes. And the consequence of that is you can't deprive them of their legal right, their statutory right, to file a motion to reopen by an action of the government. Well, the Coit Is there a principle distinction you can draw between this case and Coit? Absolutely, Your Honor. There are two. Number one, Coit filed his motion for a stay while he was still within the United States, indicating that he had every intention of filing a motion to reopen. Mr. Reyes-Torres never filed a motion to stay under those circumstances. Yes, I understand that. But why is that a principle distinction? The second, in fact, well, that's an absolutely principle distinction because, one, he's trying, he's indicated, he's saying, wait a minute, there is a I don't think he mentioned a departure bar. He said, I want to move to reopen my case. I am still within the United States. Right. Then they put him on a bus, I believe, and they removed him. Right. He said, I want to file a motion to reopen, and they took him out of the country. And they said, I'm sorry, you've effectively withdrawn your motion to reopen because you've left the country. That's right. But in this court, in court, it makes clear that, look, government, you can't take an affirmative action and thereby deem the opposing your opponent's motion waived. So this is slightly different. But why is it a meaningful distinction? It's meaningful because Congress understands, and for more than 50 years now, I think approaching 60 years, the departure bar rule has existed. Congress has been aware of it. The Attorney General has been aware of it. The fact is that Congress has chosen to let this regulation in place through numerous amendments to the Immigration Nationality Act, and it is a logical place and a logical conclusion for Congress to say, once an alien is outside of the United States, the immigration proceedings on the administrative level must end. But Congress didn't say that. You've said that. Congress hasn't said that. Congress said Congress changed the rules pertaining, the identical rule, as you know, used to apply to judicial proceedings. Correct. And Congress changed that. That's right. And in response, if you look at these statutes, the clear, at least the clear intent of Congress, as we've said in case after case, and other circuits have too, is they wanted people removed out of the country. And it used to be that the circuit courts would apply an automatic stay of removal so people couldn't be removed from the country and make their cases moot. That's right. So far, so good. But now you're doing it on an administrative level, which seems to be completely contrary to the intent of Congress. And, if I might add, as a practical matter, that may force the circuit courts to entertain stay motions that we would not otherwise entertain because now the collateral consequence is they're deprived of their administrative remedy, which would deprive them of a judicial remedy. So as you step back and look at what the organic idea of what Congress is trying to accomplish, I'm not sure that the Fourth Circuit wasn't exactly right in Williams in saying the entire departure bar is contrary to the statutory scheme. Let me hopefully – I gave that monologue so you could respond. I'm not arguing. I appreciate that, and I'll respond in this manner, Your Honor. In Neek and the Supreme Court, I think it was Justice Roberts makes clear that the purpose of ARERA, 1996 legislation, was to expedite removals. Now, what they did at that point was to remove the automatic bar to removal that existed when an alien petitioned for review from a circuit court of appeals. Now, the legislative history of this is interesting. That federal bar was based, in fact, on the departure bar. Congress codified it in 1962. Fast forward to 1990 in the Immigration Act. Congress instructed the Attorney General, issue regulations pertaining to time and number limitations as to motions to reopen. We feel that aliens are abusing the process and that they're using it for dilatory tactics. The Attorney General in 1996 did so. Now, what's interesting is she said 90 days, and she said one motion to reopen. What's interesting there is in issuing those regulations in the Federal Register and in DADA and saying the recent Second Circuit opinion makes this clear, the Attorney General came out with a position that we don't think there's any reason for these regulations. We're doing it because Congress has told us to do so, but we don't think aliens are abusing the process. Now, in ARERA, what Congress does is they say, okay, we have two regulations that the Attorney General doesn't really support but is doing so because we ordered her to do so. Regulations, of course, can be changed through administration. They codified them. They're now by statute. Congress was aware of the departure bar. Right. But it was silent on it. So in the sense of, you know, it did codify this, and now the aliens have a statutory right to file a motion to reopen within 90 days, right? I think just — it doesn't say except and unless you're in the country. I mean, that was the logic of the Fourth Circuit. They just said, look, Congress meant what it said. You have a right to file — one right to file a motion to reopen within a specified time period, and the agency can't take that away by regulation. In Marin-Rodriguez, the Seventh Circuit makes the distinction that I hope we can draw as articulately. Well, of course, that doesn't help you much on another front. It doesn't, but we'll get to that, I'm sure. What — I've read Judge Easterbrook's — Sure. And what he says is interesting. The opportunity — there is a difference between the opportunity to file a motion to reopen and Congress saying, attorneys general, you may not limit it. And so it is here. And when we think back to the departure bar, which Congress was aware of, and this notion of, you know, 40 years or 50 years of the departure bar and that Congress would somehow implicitly over — excuse me, you know, implicitly overturn it without saying so, is, as the Tenth Circuit said, you know, somewhat illogical. And so it is here. Except that I think — I think the problem in Judge Easterbrook's argument is this, is that Congress did take the initiative to say, okay, here's the law with regard to these motions. And it set — it didn't have to set time limits. It didn't have to set a temporal limit. And it did. And it didn't set — it didn't adopt what the — your departure bar. Now, I know your argument is, well, it's silent on that. The other side of the coin is they looked at it and decided not to codify it. But it — the fact that Congress didn't codify it does not mean that it does not have the force and effect of law. And I think Zane makes that fairly clear, that — Why does it make any sense in the statutory scheme? I mean, stepping back, though, if we're looking at this, why does it make any sense in the statutory scheme that Congress having said, look, we don't want to make these cases moot because we want to allow aliens to litigate them from abroad because there's an overriding goal of getting people out of the country. Yes. And I think you'd have to concede that the administrative side of this is in serious tension with the judicial side in terms of its procedure. Right? I mean, it may be legal. It may be proper. But it's in tension. So why does it make any sense? I think the tension is somewhat superficial. And here's why. By the time an alien files a motion to reopen from abroad or even from within the United States, the alien has appeared before an immigration judge. And assuming that alien has not waived his or her right to administrative appeal through the board, has two bites at the administrative apple. Congress, which I think we agree, with ARIRA at least, wants to expedite removal of aliens, said, okay, you've had two cracks at the administrative level. Once you're outside of the country, it's over. You can still, however, petition for review in a federal court because the alien has not had the opportunity to seek federal court review at that point. But Congress was so interested in the expedited removal of aliens that they said, we're going to turn this around and, okay, remove aliens as quickly as possible, but we want to absolutely grant an alien a right to full federal court review. But the problem is you deprive the alien of filing a full federal court review of the motion to reopen by saying you can't file a motion to reopen in the first instance. So, in fact, you don't get a full judicial review of the agency decision because you're precluding agency action. I mean, these are difficult issues and we have to work through them, but it just seems to be a little illogical to me. I'm sure my colleagues have other questions. If I could just answer that point, I think what Congress is doing is saying, here is the end point as it relates to administrative hearings and administrative regulations. Once the alien is outside of the country, be it willingly or unwillingly in the case of removal, administrative proceedings end. Now, certainly throughout immigration law, throughout the history of this republic, there has been a distinction between aliens who are outside of the United States seeking admission and aliens who are within the United States. It is logical and I would suggest it flows completely with Congress's intent in ARERA. Now... Okay, so let's get to the jurisdictional issue that Judge Easterbrook raised. Sure. Judge Easterbrook says, in the part of the opinion you don't like, that if the board can't say it lacks jurisdiction, and his logic is this. He says, number one, the statute says the board has jurisdiction, and two, the Supreme Court has said an agency can't circumscribe, can't narrow its own jurisdiction, and therefore, three, that the board can't say it lacks jurisdiction. The other part of the opinion which you like is the one that says, well, the board is reasonable in exercising its discretion, but the bottom line for Judge Easterbrook is the board is wrong in saying it lacks jurisdiction. So how do you respond to his argument? Well, it's plain I'm no Judge Easterbrook, so what I'm going to do is point to the Second Circuit's opinion in Zhang, which Zhang is interesting because they addressed Judge Easterbrook's opinion at that point. And what they say, and, you know, they're fairly clear. Were we writing on a blank slate, we might have done this differently. But through 50 years of board interpretation, the board has determined that it lacks jurisdiction to adjudicate these motions. I note in Reyes-Torres the board denied it a lack of jurisdiction as opposed to withdrawal, another distinction from Coit. And therefore, under Chevron deference, it's entitled to deference. Except the Supreme Court, Judge Easterbrook argues, took away that deference in respect to agencies circumscribing their own subject matter jurisdiction. So that's true. Although immigration, you know, immigration laws, I understand it. I don't know the, you know, the administrative law as to the, you know, the Supreme Court opinion that Judge Easterbrook references. But in 8 U.S.C. 1103, Congress makes plain and gives the Attorney General broad statutory authority to issue regulations. So I'm not sure that the opinion Judge Easterbrook relies upon is really quite apt because of the broad delegation that Congress has given the Attorney General in this area of the law. Now, the other thing that the Second Circuit notes in Zane is Supreme Court opinion, Commodities Futures Trading Commission versus Schor, where this Court said, look, when there's a long-standing regulation, we do not implicitly assume that Congress overruled it unless they say so. So I think that's where the jurisdictional arguments, you know, my problem with Marin Rodriguez can be handled nicely by the Second Circuit and say, look, there could be a better system. There could be a better system indeed. But this one is absolutely reasonable and survives Chevron deference. So I guess we both may agree that Judge Easterbrook was half right and half wrong. We just disagree on which half. That's unfortunate for me, I think. If I could, you know, I see my time is drawing near. With respect to the aggravated felony conviction, as I'm sure the Court is aware, you know, the Respondent at this point, in light of the desmalicia and the, you know, lack of clarity as to where that opinion lies, it seems that perhaps holding this case in abeyance makes some sense. I would note, however, that there may well be an exhaustion issue, assuming the desmalicia stands, because the retroactivity analysis does not seem to have been raised below anywhere. And before you sit down, if you could, and I know this isn't part of your brief, do you have an argument on the cardos teascas? That is the decision that says that if an alien vacates his conviction successfully, that Section 1003.2 doesn't bar the BIA from considering it. My argument is twofold. One, assuming the aggravated felony conviction stands, it's irrelevant, which is why it's not in the government's brief. Two, there are some, that's not the most clear opinion. You know, I say this not as a critic, but as someone who's read the opinion several times, it's not clear how the alien was convicted after his removal and completed his probation after his removal. I'm not sure that it was really, not that it was, you know, it just doesn't flow procedurally, so it's difficult to discern what really happened and why the departure bar ultimately doesn't apply. You know, I understand the ultimate premise, but that seems, you know, the ultimate premise being that the subsequently vacated conviction does not implicate the departure bar, but that simply seems to conflict with the regulation that's been, as you have noted repeatedly, longstanding. Do either of you have questions for government? All right. Thank you very much. Thank you. A couple points. We would encourage the court to grant a second petition for review, decide this issue, and let the board make its ruling based on whatever the outcome is in La Desma. There's no need to hold the case in abeyance. The board will be bound by whatever happens with the en banc petition in La Desma and can sort it out there. A couple issues. With respect to Cordoso, I think it's very clear that the situation here is on all fours with the situation there. Two petitioners, both were found removable for two different grounds. Both had a vacated conviction. That vacated conviction made them eligible for relief and removed the ground of removability, and the court found that the departure bar didn't apply. Going back to its earlier decisions in Estrada Rosales and Wietersburg, we feel that that's adequately addressed in our brief, so I don't want to spend too much time on it. With respect to the statutory scheme in IHRA, I would point out that in IHRA, Congress also codified the right to judicial review of a motion to reopen. In 8 U.S.C. 1252b, it said we're consolidating judicial review of removal orders with judicial review of motions to reopen. It would make no sense for Congress to provide for judicial review of motions to reopen if some people were deprived of their statutory right to file a motion to reopen. Well, perhaps. But, you know, at the end of the day, we've got to look at Brand X, and the board has spoken. So why doesn't Brand X control this case? Right. Absolutely. Well, the board has spoken, and I would say that if this court were to reach the second step of Chevron, it would have to find that the decision was unreasonable. The board in that decision says departure is this transformative event. However, the Supreme Court has recognized that petitioners who prevail on petitions for review from outside the United States can come back in to pursue the proceedings, that that's not a problem. Then the court stepped back from its position in Armendariz and Matter of Bolness and said, oh, well, when you file a motion to reopen and it's based on an in absentia order, it's not a problem that you're outside of the country. So its concession in Bolness undermines its decision in Matter of Armendariz. I would also say that the board's decision in Matter of Armendariz, as I pointed out before, has been trumped now by the court's interpretation of step one of Chevron. And I'd also say that it leads to an unreasonable result because it undermines the objectives of IHRA. The post-departure bar, if it's stricken and someone's allowed to file a motion to reopen from outside the United States, it encourages them, which is what Congress was trying to do in IHRA, to comply with removal. But if the court fashions a rule whereby you only get your statutory right to a motion to reopen if you don't leave the country, that seems to undermine that purpose. And that would bring me to my other point about stays of removal. What the government I didn't hear saying was that the board's going to stay removal to allow people to have time to file motions to reopen. The government's not saying that. And, in fact, the board, as a practical matter, will only consider a stay of removal if it's filed in conjunction with a motion to reopen. So the fact that the stay is not – the court shouldn't fashion a rule based on whether or not somebody can get a stay of removal or not. And Judge Easterbrook points out the problem with this rationale as well in his decision in Marin, which says it's – so if you don't get the stay from the board, let me clarify, you'd have to go to the Immigration and Customs Enforcement Service and ask them, and that's another branch of government that's prosecuting the removal case. And Judge Easterbrook said it's unnatural to speak of one litigant withdrawing another's motion. So if ICE has the power to grant a stay or not grant a stay, and if they grant a stay, the person gets their motion to reopen, and if they don't grant the stay,  you've put all the power in the government to decide whether or not the person gets their statutory right to file a motion to reopen. So I think that any attempt to fashion a rule based on whether or not the person's gotten a stay will undermine the intent of Congress. Thank you, Counsel. Your time has expired. Thank you. Judge Easterbrook's ears must be burning today. The case has heard and will be submitted. Thank you both for your arguments.
judges: Mills, Wallace, Thomas